No. 10-16771

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

TOM BEAN,

Plaintiff-Appellant,

v.

HOUGHTON MIFFLIN HARCOURT PUBLISHING CO.,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
HONORABLE DAVID G. CAMPBELL
(CASE 3:10-CV-08034-DGC)

BRIEF FOR THE UNITED STATES OF AMERICA
AS AMICUS CURIAE IN SUPPORT OF REVERSAL


Of Counsel:                           TONY WEST
                                       Assistant Attorney General

DAVID CARSON
 General Counsel                      SCOTT MCINTOSH
ROBERT KASUNIC                         (202) 514-4052
 Deputy General Counsel               MELISSA N. PATTERSON
U.S. COPYRIGHT OFFICE                 (202) 514-1201
                                       Attorneys, Appellate Staff
                                       Civil Division, Room 7230
                                       Department of Justice
                                       950 Pennsylvania Avenue, N.W.
                                       Washington, D.C.  20530-0001

# TABLE OF CONTENTS

**Page**

STATEMENT...................................................................................... 2

    I.    Statutory and Regulatory Framework. ................................. 3

        A.    Copyright Registration Generally. .............................. 3

        B.    Registration of Collective Works and Component Works....................................................................... 5

    II.    Proceedings Below............................................................. 9

SUMMARY OF ARGUMENT. ........................................................... 11

ARGUMENT. ...................................................................................... 12

    I.    The Copyright Office Has Permissibly Interpreted 17 U.S.C. § 409 Not to Require a Collective Work Registration Application to Identify the Author and Title of All Claimed Component Works...................................... 12

        A.    Section 409 Is Ambiguous Regarding Component Work Registration.................................................... 12

        B.    This Court Should Defer to the Copyright Office's Interpretation of Section 409. ................................. 15

    II.    Even If the District Court Correctly Construed § 409, Appellant's Registrations Are Effective Under § 411(b). ................. 22

CONCLUSION.................................................................................... 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page**

Batjac Productions Inc. v. GoodTimes Home Video Corp.,
    160 F.3d 1223 (9th Cir. 1998). ........................................................ 15

Bodine v. Graco, Inc.,
    533 F.3d 1145  (9th Cir. 2008). ...................................................... 14

Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984)......................................................................... 15

Data Gen. Corp. v. Grumman Sys. Support Corp.,
    36 F.3d 1147 (1st Cir.1994), abrogated on other grounds by
    Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010). ............... 25

Idearc Media Corp. v. Northwest Directories, Inc.,
    623 F. Supp. 2d 1223 (D. Or. 2008). ............................................... 20

Marascalco v. Fantasy, Inc.,
    953 F.2d 469 (9th Cir. 1991). .......................................................... 16

Morris v. Business Concepts, Inc.,
    259 F.3d 65 (2d Cir. 2001), abrogated on other grounds by
    Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010). ............... 20

Morris v. Business Concepts, Inc.,
    283 F.3d 502 (2d Cir. 2002). ........................................................... 20

Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,
    684 F.2d 821 (11th Cir. 1982). ........................................................ 25

Reed Elsevier, Inc. v. Muchnick,
    130 S. Ct. 1237 (2010)............................................... 4, 20, 21, 25

Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.,
    531 F.3d 962 (9th Cir. 2008). .......................................................... 16

ii

S.O.S., Inc. v. Payday, Inc.,
    886 F.2d 1081 (9th Cir. 1989). ........................................................ 24

St. Luke's Cataract and Laser Institute, P.A. v. Sanderson,
    573 F.3d 1186 (11th Cir. 2009). ...................................................... 24

Szabo v. Errisson,
    68 F.3d 940 (5th Cir. 1995) abrogated on other grounds by
    Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010). ................................ 21

United Staes v. Haggar Apparel Co.,
    526 U.S. 380 (1999). ........................................................................ 15

Urantia Foundation v. Maaherra,
    114 F.3d 955 (9th Cir. 1997). .......................................................... 25

Xoom, Inc. v. Imageline, Inc.,
    323 F.3d 279 (4th Cir. 2003), abrogated on other grounds by
    Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010). ................................ 19

**Statutes:**

17 U.S.C. § 101 ................................................................................ 5

17 U.S.C. § 102 ................................................................................ 3

17 U.S.C. § 103 ............................................................................ 5, 21

17 U.S.C. § 201(a). ........................................................................ 3

17 U.S.C. § 201(c). ........................................................................ 5

17 U.S.C. § 201(d). ........................................................................ 5

17 U.S.C. § 408 .......................................................................... 17, 18

17 U.S.C. §§ 408-410. .................................................................... 1

17 U.S.C. §§ 408-412. ................................................................ 3

17 U.S.C. § 408(a). .................................................................. 3

17 U.S.C. § 408(b). ................................................................ 19

17 U.S.C. § 408(c). ....................................................... 6, 14, 17

17 U.S.C. § 408(c)(1). ............................................................ 14

17 U.S.C. § 408(c)(2)(B). ....................................................... 14

17 U.S.C. § 409 ................................................... 2, 6, 10, 11, 12

17 U.S.C. § 409(2). .......................................................... 12, 21

17 U.S.C. § 409(6). ..................................................... 12, 14, 21

17 U.S.C. § 409(8). ............................................................... 14

17 U.S.C. § 409(9). ............................................................... 13

17 U.S.C. § 410(a). ............................................................ 3, 6

17 U.S.C. § 410(c). ................................................................ 4

17 U.S.C. § 411(a). ...................................... 3, 4, 10, 19, 20

17 U.S.C. § 411(b). ............................................................... 12

17 U.S.C. § 411(b)(1). ....................................................... 2, 4, 22

17 U.S.C. § 412 ............................................................... 4, 26

17 U.S.C. §§ 504-505. ............................................................. 4

17 U.S.C. § 701 .................................................................... 3

17 U.S.C. § 702................................................................................. 1, 6

35 U.S.C. 2(b)(8)-(12). .................................................................... 2

**Regulations:**

37 C.F.R. § 202.3. .............................................................................. 6

37 C.F.R. § 202.3(b)(5)...................................................................... 6

**Legislative Materials:**

H. Rep. No. 94-1476 (1975). ........................................................... 18

H. Rep. No. 110-617 (2008). ...................................................... 24, 27

**Other Authorities:**

Circular 62, "Copyright Registration for Single Serial Issues". .................. 8, 17, 27

Circular 62A, "Group Registration of Newspapers and Newsletters on Form
    on Form G/DN," available at
    http://www.copyright.gov/circs/circ62a.pdf (last visited Dec. 13, 2010)...... 8, 27

Circular 65, "Copyright Registration for Automated Databases"............................ 9

Compendium of Copyright Office Practice II § 615.06.................................... 7, 16

Compendium of Copyright Office Practice II § 615.07(b)(3). .......................... 8, 16

Library of Congress, Annual Report of the Librarian of Congress for the
    Fiscal Year Ending September 30, 2007 (2008)................................. 19

U.S. Copyright Office, Annual Report of the Register of Copyrights,
    Fiscal Year Ending September 30, 2007. .......................................... 19

U.S. Dep't of Justice, Progress Report of the Department of Justice's Task
    Force on Intellectual Property (June 2006)......................................... 2

v

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

TOM BEAN,

Plaintiff-Appellant,

v.

HOUGHTON MIFFLIN HARCOURT PUBLISHING CO.,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
HONORABLE DAVID G. CAMPBELL
(CASE 3:10-CV-08034-DGC)

BRIEF FOR THE UNITED STATES OF AMERICA
AS AMICUS CURIAE IN SUPPORT OF REVERSAL

The United States respectfully submits this brief to present its views as

*amicus curiae* on the statutory issues presented in this case.  The United States has

significant responsibilities related to, and derives important benefits from, the

registration of creative works under the Copyright Act.  Congress has made the

United States Copyright Office, headed by the Register of Copyrights

("Register"), responsible for administering the registration system and determining

whether works meet the requirements for registration.  See 17 U.S.C. §§ 408-410,

702.  The interpretation of the Copyright Act is also of interest to the United States

Patent and Trademark Office, which advises the President and other agencies on

matters of intellectual property policy, <u>see</u> 35 U.S.C. 2(b)(8)-(12), and which

advocates the effective protection of intellectual property.  Finally, because

registration affects the judicial remedies for copyright infringement, registration

requirements are of interest to the Department of Justice, which has recognized the

importance of civil enforcement in the effort to combat copyright violations.  <u>See</u>

U.S. Dep't of Justice, Progress Report of the Department of Justice's Task Force

on Intellectual Property 33, 75 (June 2006).

## STATEMENT

A "collective work" is a copyrightable compilation made up of indepen-

dently copyrightable component works.  The copyrights in a collective work and

its component works are all eligible for registration through the Copyright Office.

The Copyright Office has long interpreted the Copyright Act to permit an

application to seek registration of a collective work and the component works that

the claimant owns, even if the application does not specify the authors and titles of

the component works.  This case involves whether that longstanding practice, and

the administrative construction of the Act on which it rests, are consistent with 17

U.S.C. § 409, and if not, whether collective work registration applications that

omit the authors and titles of component works are nonetheless legally effective

under 17 U.S.C. § 411(b)(1).

I.    **Statutory and Regulatory Framework**

A.  Copyright Registration Generally

The Copyright Act vests the author of any "work of authorship" with a copyright upon the work's creation and fixation in a tangible medium, without any application to the government.  17 U.S.C. § 102 ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression[.]"); id. § 201(a) ("Copyright in a work protected under this title vests initially in the author or authors of the work."); id. § 408(a) ("[R]egistration is not a condition of copyright protection.").  A copyright claimant has the option to apply to register his copyright with the Register.  See 17 U.S.C. §§ 408-412, 701. The Register has statutory authority to examine registration applications and determine whether "the material deposited constitutes copyrightable subject matter and . . . the other legal and formal requirements of this title have been met."  17 U.S.C. § 410(a).  If so, the Register registers the claim and issues the claimant a certificate of registration.  See id.

Registration affords the copyright claimant benefits that mere copyright ownership alone does not.  A copyright claimant of a United States work may not sue for infringement until his copyright claim has been registered.  17 U.S.C.

3

§ 411(a); <u>see generally</u> <u>Reed Elsevier, Inc. v. Muchnick</u>, 130 S. Ct. 1237 (2010).[1] If a copyright is registered before infringement, or within three months of the first publication of the work, registration also allows the claimant to seek statutory damages and attorney's fees.  <u>See</u> 17 U.S.C. §§ 412, 504-505.  Finally, a certificate of registration with an effective date before or within five years of first publication constitutes prima facie evidence of copyright validity and the facts stated in the certificate of registration.  <u>See</u> 17 U.S.C. § 410(c).

In 2008, Congress amended the Copyright Act to provide that a certificate of registration satisfies the requirements of § 411, which requires registration of a United States work as a precondition to suit, and § 412, which provides statutory damages and attorney's fees only for post-registration infringement, "regardless of whether the certificate contains any inaccurate information," unless "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1).

---

[1] If the claimant has applied for registration but the application has been denied, the claimant may bring suit for infringement "if notice thereof, with a copy of the complaint, is served on the Register of Copyrights."  17 U.S.C. § 411(a).

B.  Registration of Collective Works and Component Works

Compilations – including "collective works," which are compilations that include independently copyrightable materials – are afforded copyright protection, but this protection "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."  See 17 U.S.C. §§ 101, 103, 201(c).[2]  However, if the author of a collective work is also the author of the component works, or if the authors of the component works transfer all rights in the works to him, the author of the collective work may claim a copyright in the component works that make up the collective work.  See 17 U.S.C. § 201(d).

This case concerns the ways in which a collective work claimant who also holds a copyright in the collective work's component works may register his

---

[2]  The Copyright Act defines a "compilation" as a "work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.  Thus, the term "compilation" includes collections of data that are not in themselves copyrightable material, such as a list of stock prices for a certain day.  A "collective work," such as a newspaper, is a type of compilation that includes independently copyrightable component works.  See id.  Because the issue presented in this case involves only collective works – not compilations more generally – this brief refers only to "collective works."

copyrights in those component works.  The Copyright Act provides that "[t]he application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include" specified information, including "the name and nationality or domicile of the author" and "the title of the work."  17 U.S.C. § 409.  In addition to statutory authority to determine whether an application for registration meets the "legal and formal requirements" of Title 17, 17 U.S.C. § 410(a), the Copyright Act gives the Register specific authority to "specify by regulation the administrative classes into which works are to be placed for purposes of deposit and registration," and these "regulations may require or permit, for particular classes, . . . a single registration for a group of related works."  17 U.S.C. § 408(c); see also 17 U.S.C. § 702 (giving the Register general authority to "establish regulations not inconsistent with law for the administration of the functions and duties made the responsibility of the Register under this title").

Pursuant to her authority under § 408(c), the Register has promulgated regulations governing registration requirements.  See 37 C.F.R. § 202.3.  These regulations specifically provide for the registration of compilations, including automated databases.  See 37 C.F.R. § 202.3(b)(5) ("Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a

6

single registration may be made for automated databases and their updates or other derivative versions that are original works of authorship" where certain conditions are met.).

Although this regulation does not address whether any component works within an automated database are also registered through this process, the Copyright Office has addressed this issue in guidance documents. In the Compendium of Copyright Office Practice II, a publicly available manual providing advice regarding registrations, and in Circulars providing advice to the public, the Copyright Office has consistently taken the position that the registration of a collective work also registers any independently copyrightable works within the collective work – referred to here as "component works" – in which the claimant owns all rights, even if the registration application does not specify the titles and authors of the component works.

The Compendium instructs that when registering a collective work, "the application should name the author of the collective work," but that "[t]he names of the individual authors of separate contributions being registered as part of the claim need not be given on the application." Compendium § 615.06; see also id. ("The registration [of a collective work] may cover (a) the collective work authorship, (b) any contribution created by the employee or other party

7

commissioned by the author of a work made for hire, and (c) any other contributions that the claimant of the collective work obtained by transfer."). The Compendium also states that "[i]f the work being registered was created by a large number of authors, the application will be considered acceptable if it names at least three of those authors, followed by a statement such as 'and [number] others.'" Compendium § 615.07(b)(3).

In several Circulars, the Copyright Office has explained that registration of various forms of collective works will also register independently copyrightable works within the collective work that the copyright claimant owns. See RE 63-65, Circular 62, "Copyright Registration for Single Serial Issues" ("When a serial issue includes independently authored contributions in which all rights have been transferred in writing to the claimant of the entire serial issue, it is not necessary to include the names of the contributors. Whether those contributors are listed or not, the copyright claim in the serial issue as a whole would extend to those contributions."); Circular 62A, "Group Registration of Newspapers and Newsletters on Form G/DN," available at

http://www.copyright.gov/circs/circ62a.pdf (last visited Dec. 13, 2010) (stating

8

that the registration covers the "content of any contributions (for example, text or photos)").[3]

## II.    Proceedings Below

Appellant Tom Bean, a photographer, created the images at issue in this case and assigned the copyrights in those images to Corbis Corporation ("Corbis"). See Record Excerpt ("RE") 3; D. Ct. Op. at 2. Corbis included the images in six automated databases, each containing between 11,000 and 613,000 photographs, and filed registration applications covering the databases and their component images. See RE 3; D. Ct. Op. at 2. As permitted by the Copyright Office's guidance documents, Corbis's registration applications did not list the author's information and title of each image within the databases to which the registration was intended to extend. After the Copyright Office issued the registrations, the registered copyrights in Bean's images reverted to Bean. See Complaint, Docket #1; RE 166-167.

_____

[3] The Copyright Office previously published Circular 65, "Copyright Registration for Automated Databases." See RE 68-73. This circular is currently under revision. In its previous incarnation, cited by appellant below, Circular 65 suggested that copyrightable component works within the database would also be registered along with the database itself. See RE 70 (comparing claims in databases of previously published or registered works, which must be limited to the compilation, with claims in databases with copyrightable material being "published or registered for the first time," in which case the "claim could also extend to 'text'").

Bean brought this action against Houghton Mifflin Harcourt Publishing Company ("Houghton Mifflin"), alleging that it had infringed his copyright in several photographs by exceeding the limited license he had granted it through Corbis, which also served as Bean's licensing agent.  See Complaint, Docket #1; RE 165-169.  Houghton Mifflin moved to dismiss Bean's claims, arguing that Bean did not have a valid copyright registration for the photographs in question and therefore could not bring suit under 17 U.S.C. § 411(a), which makes registration a precondition for an infringement action.  See Motion to Dismiss, Docket #20; RE 131-142.  Houghton Mifflin asserted that the registrations Corbis had obtained, and on which Bean based his claims, were invalid as to Bean's works because five of the six registrations did not identify Bean as a registered author and none identified the titles of Bean's works.  See id.

The district court granted Houghton Mifflin's motion to dismiss.  See District Court Order, Docket #40.  The court construed 17 U.S.C. § 409 to mean that only those works whose titles and authors are listed on the registration application are within the scope of the resultant registration.  See id. at 5-7.  Since Corbis's registration application did not identify the authors and/or the titles of the component photographs, the court concluded that these component photographs were not within the scope of the registration.  See id.  The court rejected Bean's

10

argument that § 411(b) saved his registrations, reasoning that "Corbis did not merely provide inaccurate information for the individual photographs, it failed to comply with the requirements of § 409 almost completely" and that "[r]eading § 411 to save such incomplete registrations would eviscerate the requirements of § 409." Id. at 6. The court dismissed Bean's suit for lack of a registration covering the allegedly infringed photographs. See id. at 7. This appeal followed.

## SUMMARY OF ARGUMENT

The district court erred in concluding that the Copyright Act, 17 U.S.C. § 409, requires a collective work claimant to list certain information on a registration application in order to also register independently copyrightable works within the collective work fully owned by the claimant. Far from providing an unambiguous answer, the text of Section 409 is in fact silent regarding the application requirements for registering component works of a collective work. For more than thirty years, since the Copyright Office started registering works under the Copyright Act of 1976, the Copyright Office has interpreted § 409 to permit claimants to register component works using the procedures appellant followed here. That longstanding administrative interpretation is reasonable, and the district court should have deferred to it rather than adopting an interpretation of § 409 that runs directly counter to it.

11

Moreover, even if the district court's interpretation of § 409 were correct, appellant's registrations would remain effective by virtue of 17 U.S.C. § 411(b). Section 411(b) provides that registrations containing "inaccurate information" nonetheless satisfy the Copyright Act's requirements if the claimant did not know of the inaccuracies and the inaccuracies would not have caused the Register of Copyrights to refuse registration. Since appellant's registration application complied with the Copyright Office's long-held and explicit policies regarding component work registration, both these conditions are satisfied here.

**ARGUMENT**

**I.    The Copyright Office Has Permissibly Interpreted 17 U.S.C. § 409 Not to Require a Collective Work Registration Application to Identify the Author and Title of All Claimed Component Works.**

A.  Section 409 Is Ambiguous Regarding Component Work Registration.

The Copyright Act provides that "[t]he application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include," inter alia, "the name and nationality or domicile of the author or authors" and "the title of the work, together with any previous or alternative titles under which the work can be identified." 17 U.S.C. § 409(2), (6). The district court interpreted this language as an unambiguous statutory requirement that a collective work claimant must list the authors and titles of component works in his

12

application in order to register the component works along with the collective

work.  See RE 6-7; D. Ct. Op. at 5-6 (assuming that § 409 required registrants to

name authors and title in order to cover component works).

The district court erred.  Section 409 does not contain unambiguous

requirements regarding registration of component works.  Indeed, § 409 says

nothing about how a copyright claimant must register component works.  It simply

states that a registration application must include certain information.  The statute

does not specify whether an application to register a collective work must include

authors' information and titles for every component work sought to be covered by

the registration, or whether listing the author's information and title of the

collective work alone suffices.  Nor does the statute specify whether the

registration of a collective work may cover independently copyrightable

component works that the claimant owns, or address the scope of a registration at

all.[4]  As to these issues, § 409 is silent.

----

[4]  The only reference § 409 makes to the registration of a compilation makes
clear that Congress contemplated that copyrights in compilations could be
registered, but does not address the application requirements for – or the scope of
– such a registration.  Section 409(9) states that the "application . . . shall include
. . . in the case of a compilation or derivative work, an identification of any
preexisting work or works that it is based on or incorporates, and a brief, general
statement of the additional material covered by the copyright claim being
registered."  17 U.S.C. § 409(9).

Indeed, the district court's conclusion that § 409 unambiguously requires claimants to list the titles and authors of every work intended to be covered by the registration is at odds with other portions of the Copyright Act.  See Bodine v. Graco, Inc., 533 F.3d 1145, 1151 (9th Cir. 2008) (the "meaning of statutory language, plain or not, depends on context" and courts must "construe statutes, not isolated provisions") (internal quotation marks omitted).  Section 408(c)(1) provides the Register with specific authority to promulgate regulations that "may require or permit . . . a single registration for a group of related works."  "Without prejudice to the general authority" in § 408(c)(1), § 408(c)(2)(B) requires the Register to establish regulations permitting a single registration for a specific type of group of related works (same authored contributions to periodicals within a twelve-month period), requiring that the application for such a registration "identif[y] each work separately, including the periodical containing it and its date of first publication."  17 U.S.C. § 408(c)(2)(B).  If Congress had intended the general registration requirements in § 409 to plainly require the disclosure of all titles and dates of first publication (if published) for all works being registered on a single application, see 17 U.S.C. § 409(6), (8), it would have been unnecessary to specify that the registration application in § 408(c)(2)(B) had to identify each work and its publication date separately.  Furthermore, § 408(c) evidences

14

Congress's intent to give the Register the flexibility to create a group registration option subject to the requirements in that provision, and § 409 – enacted at the same time as § 408 – is understandably silent regarding the application requirements for a group registration regime that had not yet been created.

B.  This Court Should Defer to the Copyright Office's Interpretation of Section 409.

Given that § 409 does not specify the scope of a collective work's registration, or explicitly require that every author and title for every work being registered must be listed in an application, the statute is silent as to "the precise question at issue" here, and thus ambiguous.  See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984); see also United Staes v. Haggar Apparel Co., 526 U.S. 380, 392-393 (1999) (statute may be "ambiguous in that the agency must use its discretion to determine how best to implement the policy in those cases not covered by the statute's specific terms").  When faced with such statutory ambiguity, this Court defers to the Copyright Office's reasonable interpretation of the statute.  See Batjac Productions Inc. v. GoodTimes Home Video Corp., 160 F.3d 1223, 1230-1231 (9th Cir. 1998) (looking to the Compendium and stating that "'[t]he Register has the authority to interpret the copyright laws and [ ] its interpretations are entitled to judicial deference if

15

reasonable'") (quoting <u>Marascalco v. Fantasy, Inc.</u>, 953 F.2d 469, 473 (9th Cir. 1991)); <u>see also</u> <u>Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.</u>, 531 F.3d 962, 973 (9th Cir. 2008) (noting <u>Batjac</u>'s deference to the Compendium).

  The Copyright Office has consistently interpreted § 409 to permit claimants to register component works they own by registering the collective work, even if the collective work registration does not specify the titles and author's information for each component work.  Consistent with § 409's plain language, the Copyright Office requires that every application to register a compilation copyright contain the title and author's information for the collective work.  The Copyright Office does not, however, require applicants to list the title and author's information for component works the applicant owns in full and also wishes to register.  <u>See</u> Compendium of Copyright Office Practice II § 615.06 (providing that collective work "application[s] should name the author of the collective work," and that "[t]he names of the individual authors of separate contributions being registered as part of the claim need not be given on the application"); <u>see also</u> <u>id.</u> ("The registration may cover (a) the collective work authorship, (b) any contribution created by the employee or other party commissioned by the author of a work made for hire, and (c) any other contributions that the claimant of the collective work obtained by transfer."); id. § 615.07(b)(3) ("If the work being registered was

16

created by a large number of authors, the application will be considered acceptable if it names at least three of those authors, followed by a statement such as 'and [number] others.'").[5]

     The Copyright Office's decision to not require collective work claimants to list information for every component work they own is reasonable in light of pragmatic concerns. Many traditional forms of collective works, such newspapers and magazines, can contain hundreds – if not thousands – of copyrightable works that the claimant owns but did not author. Listing all component works and their authors could be so burdensome on applicants as to discourage registration.[6]

----

[5] The Copyright Office's interpretation of the registration requirements for collective works is also apparent from its circulars governing specific types of collective works. See Circular 62, "Copyright Registration for Single Serial Issues" ("When a serial issue includes independently authored contributions in which all rights have been transferred in writing to the claimant of the entire serial issue, it is not necessary to include the names of the contributors. Whether those contributors are listed or not, the copyright claim in the serial issue as a whole would extend to those contributions."); Circular 62A, "Group Registration of Newspapers and Newsletters on Form G/DN" (stating that the registration covers the "content of any contributions (for example, text or photos)").

[6] In drafting the Act, Congress recognized the need to avoid burdensome registration requirements by giving the Register the authority to allow group registrations. See 17 U.S.C. § 408(c). The House Report to the Act notes that there is a "principle of administrative flexibility underlying all of the deposit and registration provisions," and states:

     The provision empowering the Register to allow a number of
     related works to be registered together as a group [under 17

17

Moreover, at the time that Congress was drafting § 409 as part of the Copyright Act of 1976, and until very recently, Copyright Office personnel had to manually type in all the information received on a paper copyright application into the Office's catalog of registered works.  Entering hundreds of authors and titles of component works for the many collective works registered would have imposed a huge burden on the Copyright Office as well as on applicants, and would have required higher application fees to defray processing costs.

Nor is the Copyright Office's decision not to require disclosure of the § 409 information for all component works contrary to the purposes of the registration system.  Providing information to the public is only one of such purposes.

---

> U.S.C. § 408] represents a needed and important liberalization of the law now in effect. At present the requirement for separate registrations where related works or parts of a work are published separately has created administrative problems and has resulted in unnecessary burdens and expenses on authors and other copyright owners. In a number of cases the technical necessity for separate applications and fees has caused copyright owners to forego copyright altogether. Examples of cases where these undesirable and unnecessary results could be avoided by allowing a single registration include the various editions or issues of a daily newspaper, a work published in serial installments, a group of related jewelry designs, a group of photographs by one photographer, a series of greeting cards related to each other in some way, or a group of poems by a single author.

H. Rep. No. 94-1476 at 154 (1975).

18

Registration – and the accompanying deposit requirements – also serves as a source of acquisitions for the Library of Congress. See 17 U.S.C. § 408(b); U.S. Copyright Office, Annual Report of the Register of Copyrights, Fiscal Year Ending September 30, 2007, at 13-14, 16; Library of Congress, Annual Report of the Librarian of Congress for the Fiscal Year Ending September 30, 2007, at 25 (2008) ("Each year, the Copyright Office registers more than 500,000 claims and transfers more than 1 million copyrighted works to the Library's collection through the copyright deposit system."). The registration process also provides a way to establish what the work was at the time of registration, thus facilitating the adjudication of infringement claims. Had the Copyright Office imposed burdensome requirements in order to enhance the public record, these other purposes could have gone unfulfilled. Thus, given the practical difficulties and potential counterproductivity of requiring claimants to detail the component works to which a collective work registration was intended to extend, the Copyright Office's interpretation is reasonable.

Multiple courts have concluded that registration of a collective work also registers component works for the purposes of 17 U.S.C. § 411(a). See Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 283-284 (4th Cir. 2003) (adopting the view "that where an owner of a collective work also owns the copyright for a

19

constituent part of that work, registration of the collective work is sufficient to permit an infringement action of the constituent part"), abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010); Morris v. Business Concepts, Inc., 259 F.3d 65, 68 (2d Cir. 2001) ("Under the law of this Circuit, where the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part.")[7], abrogated on other grounds by Reed Elsevier; Idearc Media Corp. v. Northwest Directories, Inc., 623 F. Supp. 2d 1223, 1230 (D. Or. 2008) (adopting Morris's holding and stating that "[i]t would be absurd and inefficient to require the author of a larger work to individually register every possible smaller component of that work that qualified individually for copyright protection").

Moreover, under the district court's reasoning, the titles of even those component works authored by the compilation claimant would have to be listed on

---

[7] In response to a rehearing petition, the Second Circuit amended its opinion in Morris. See Morris v. Business Concepts, Inc., 283 F.3d 502, 505 (2d Cir. 2002). The court did not strike the quoted portion of the opinion, and indeed, it reaffirmed its understanding that registration of a collective work extended to register "constituent works" that have been transferred to the claimant. See id. at 505 ("[I]f all rights in a constituent work have not been transferred to the claimant, a collective work registration will not apply to the constituent work. If, on the other hand, all rights have been transferred to the claimant, then the constituent work is included in the registration of the collective work.").

the registration application, since § 409 does not make any distinctions between an application's need for titles and authors.  <u>See</u> 17 U.S.C. § 409(2), (6).  For example, in order to register a record album by a single artist, a claimant would thus have to list on the application every song on the album individually, a theory that courts have previously rejected.  <u>See, e.g.</u>, <u>Szabo v. Errisson</u>, 68 F.3d 940, 943 (5th Cir. 1995), <u>abrogated on other grounds by</u> <u>Reed Elsevier</u>.  Such a rule would be particularly anomalous when registering a group of photographs, since most photographs are not individually titled.

Houghton Mifflin's argument below that 17 U.S.C. § 103 controls the scope of a compilation's registration is without merit.  <u>See</u> Docket # 20 at 5-6.  Section 103 provides that a copyright in a compilation "extends only to the material contributed by the" compilation's author and "does not imply any exclusive right in the preexisting material."  However, § 103 – part of Chapter 1 within Title 17, governing "Subject Matter and Scope of Copyright" – addresses the *existence* of copyrights, not the *registration* of copyrights, a topic addressed in Chapter 4, "Copyright Notice, Deposit, and Registration."  It is undisputed that a collective work's author could not acquire rights to another author's work by simply including it within a collective work.  The question here, however, concerns what procedures a copyright claimant who owns the copyright in both a collective work

21

and in some or all of the collective work's component works must comply with in

order to register all the relevant copyrights.  Chapter 1 does not address this

question, or indeed, anything about the registration procedures.

## II.   Even If the District Court Correctly Construed § 409, Appellant's Registrations Are Effective Under § 411(b).

Even if § 409 requires a collective work claimant to list the authors and

titles of all component works in order to register those works, the district court

erred in concluding that the plaintiff's registration certificate as issued did not

allow him to bring an infringement action.  As noted above, the Copyright Act was

amended in 2008 to provide:

> A certificate of registration satisfies the requirements of this
> section [which requires registration as a precondition to suit]
> and section 412 [which provides statutory damages and
> attorney's fees only for post-registration infringement],
> *regardless of whether the certificate contains any inaccurate
> information*, unless --
>
>> (A) the inaccurate information was included on the
>> application for copyright registration with knowledge
>> that it was inaccurate; and
>>
>> (B) the inaccuracy of the information, if known, would
>> have caused the Register of Copyrights to refuse
>> registration.

17 U.S.C. § 411(b)(1) (emphasis added).  Because plaintiff had a "certificate of

registration" that covered his photographs under Copyright Office policies in

22

effect when it was issued, he satisfied the registration requirements of § 411(a) and § 412, even if his registration application was inaccurate insofar as it failed to list authors' information and titles for all the component works the registration was intended to cover.  Since plaintiff and his registering agent Corbis had acted in accordance with Copyright Office policies when attempting to register unspecified component works via a collective work registration application, they could not have "known that it [the provided information] was inaccurate" under the district court's newly announced construction of § 409, and certainly any such inaccuracies would not have caused the Register to refuse registration, since they were the direct result of the Copyright Office's guidance.

The district court rejected plaintiff's invocation of § 411(b), reasoning that with respect to the component works, plaintiff's registration "did not merely provide merely inaccurate information" because it entirely omitted the component works' titles and authors.  See RE 7; D. Ct. Op. at 6.  The district court concluded that "[r]eading § 411 to save such incomplete registrations would eviscerate the requirements of § 409."  Id.

The district court's interpretation of "inaccurate," however, is needlessly narrow.  Omission of information is one kind of inaccuracy, and an unknowing error of any sort is immaterial if its discovery would not have led the Copyright

23

Office to refuse the application.  See St. Luke's Cataract and Laser Institute, P.A. v. Sanderson, 573 F.3d 1186, 1201 (11th Cir. 2009) (discussing § 411(b) and noting that "[o]missions or misrepresentations in a copyright application can render the registration invalid where there has been intentional or purposeful concealment of relevant information,'" that "there must be a showing of 'scienter' in order to invalidate a copyright registration," and that "an error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application"); see also S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1086 (9th Cir. 1989) (applying judge-made rule in effect before § 411(b)'s enactment that "[a]bsent intent to defraud and prejudice, inaccuracies in copyright registration do not bar actions for infringement" and refusing to invalidate copyright registration where claimant had omitted author of an underlying work).  Especially in light of indications in the legislative history that Congress intended good faith registrations to satisfy the statutory registration requirements so long as the Register considered registration appropriate, this Court should construe § 411(b) to encompass the sort of application errors Houghton Mifflin contends that appellant made here.  See H. Rep. No. 110-617 at 24 (2008) ("[T]he Act makes clear that a registration containing inaccuracies will satisfy the registration requirements of the Copyright Act unless the mistake was knowingly made and the

24

inaccuracy, if known, would have caused the Register of Copyrights to refuse the registration.").[8]

Contrary to the district court's conclusions, reading § 411(b) thus would not "eviscerate" § 409. The plain language of § 411(b) instructs courts to save inaccurate registrations. Consistent with Congress's intention that such flawed registrations be deemed satisfactory for the purposes of § 411 and § 412 if they were made in good faith and in conformance with Copyright Office standards, this

---

[8]    Even before the enactment of § 411(b), courts had long held that innocent errors in registration applications, including omissions, did not affect the validity of the resulting registration. See, e.g., Urantia Foundation v. Maaherra, 114 F.3d 955, 963 (9th Cir. 1997) ("The case law is overwhelming that inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."); Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1161 (1st Cir.1994), abrogated on other grounds by Reed Elsevier ("It is well established that immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration. . . . In general, an error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application."); Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 828 (11th Cir. 1982) (noting that "omissions or misrepresentations in a copyright application can render the registration invalid" only where there has been "intentional or purposeful concealment of relevant information"). The registrations here are entitled to be given effect under these decisions, because even if § 409(2) and § 409(6) are deemed to require information about the works that the claimant failed to provide, the omissions were indisputably non-fraudulent, did not prejudice the appellee, and would not have caused the Copyright Office to reject the registrations. Nothing in the legislative history of § 411(b) suggests that Congress wished to invalidate registrations that would otherwise pass muster under the pre-existing case law.

25

reading would only save those registrations that the Copyright Office would have registered under extant – if mistaken – Copyright Office guidance in effect at the time of the application.  Moreover, inaccuracies in, or omissions of, registration information required by § 409 still carry consequences, even if § 411(b) renders an imperfect registration effective for the purposes of § 411(a) and § 412.  Such an imperfect registration would not grant the claimant the benefit of the statutory presumption of validity described in 17 U.S.C. § 410(c).

Indeed, if the district court's interpretation of § 409 were correct, failing to apply § 411(b) to registrations such as appellant's would have a devastating effect on millions of registrations acquired in compliance with Copyright Office policies. There is no question that the underlying component works here are copyrightable subject matter, or that had the copyright holders been on notice of the district court's interpretation, they could have registered their copyrights in the component works by listing those works individually on their registration applications.[9]  The district court's reasoning would allow infringers to unjustly benefit because of copyright claimants' compliance with longstanding Copyright Office policies.

_____

[9]  Although copyright claimants with invalidated registrations could seek to register their component works anew, such delayed registration could deprive the claimants of important benefits of registration, such as the right to recover statutory damages and attorney's fees for any infringement that commenced before registration.  See 17 U.S.C. § 412.

26

Moreover, the effects of the district court's reasoning would not be confined to registrations of works within automated databases, since the district court's reading of § 409 would apply equally to the Copyright Office's policies permitting registration of more traditional forms of collective works – such as newspapers and magazines – to also register component works the claimant owns.  <u>See</u> Circulars 62, 62a.  Such widespread disruption of millions of copyrights that good faith registrants – and the Copyright Office – believed valid would allow "intellectual property thieves" to "exploit[]" a "loophole" created by mistakes in the application process, contrary to Congress's intent in enacting § 411(b).  H. Rep. No. 110-617 at 24 (2008).

27

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's

order and remand the case for further proceedings.


                                        Respectfully submitted,


 Of Counsel:                            TONY WEST
                                         Assistant Attorney General

 DAVID CARSON
  General Counsel                       SCOTT MCINTOSH
 ROBERT KASUNIC                          (202) 514-4052
  Deputy General Counsel                /s/ Melissa N. Patterson
 U.S. COPYRIGHT OFFICE                   MELISSA N. PATTERSON
                                         (202) 514-1201
                                         Attorneys, Appellate Staff
                                         Civil Division, Room 7230
                                         Department of Justice
                                         950 Pennsylvania Avenue, N.W.
                                         Washington, D.C.  20530-0001

 DECEMBER 2010

28

**CERTIFICATE OF COMPLIANCE**

Counsel hereby certifies that the foregoing Brief for the United States of America as Amicus Curiae satisfies the requirements of Federal Rules of Appellate Procedure 32(a)(7) and 29(d) and Ninth Circuit Rule 32-1. The brief was prepared in Times New Roman 14-point, proportionally spaced font, and contains 6,134 words.

/s/ Melissa N. Patterson
Melissa N. Patterson
Counsel for the United States
Melissa.Patterson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2010, I electronically

filed the foregoing with the Clerk of the United States Court of Appeals for the

Ninth Circuit by using the appellate CM/ECF system. The following participants

in the case who are registered CM/ECF users will be served by the CM/ECF

system:

Christopher Seidman
Harmon & Seidman LCC
101 S Third Street
Suite 265
Grand Junction, CO 81501
chris@harmonseidman.com

James Russell Jackson
Skadden, Arps, Slate, Meagher & Flom LLP
42-416
Four Times Square
New York, NY 10036
russell.jackson@skadden.com

Peter S. Kozinets
STEPTOE & JOHNSON, LLP
Collier Center
1600
201 E. Washington St.
Phoenix, AZ 85004-2382
pkozinets@steptoe.com

David Jeremy Bodney
STEPTOE & JOHNSON, LLP
Collier Center
Suite 1600
201 E. Washington St.
Phoenix, AZ 85004-2382

Maurice James Harmon
Harmon & Seidman LLC
533 Walnut Drive
The Pennsville School
Northampton, PA 18067


I further certify that some of the participants in the case are not registered

CM/ECF users. I have mailed the foregoing document, via first-class mail,

postage prepaid, to the following individual:

David R. Pehlke
Skadden Arps Slate Meagher & Flom LLP
Suite 2700
155 N Wacker Dr.
Chicago, IL 60606


/s/ Melissa N. Patterson
Melissa N. Patterson
Civil Division, Appellate Staff
U.S. Department of Justice
950 Pennsylvania Ave., NW, Room 7230
Washington, DC 20530
(202) 514-1201
Melissa.Patterson@usdoj.gov